**FILED & ENTERED**

**JUN 07 2022**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** fisherl    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Joseph Wanamaker<br><br><br><br>Debtor(s). | Case No.: 1:20-bk-10026-VK<br><br>CHAPTER 7<br><br>**TENTATIVE RULING ON THE FOLLOWING MOTIONS: DOCKET NUMBERS: 202, 409, 430, 440, 446, 448, 455**<br><br>Date:    June 7, 2022<br>Time:    10:00 AM<br>Courtroom:  302 |

COURT COMMENT: THE PARTIES MUST REALIZE THAT I AM NEW TO THIS CASE AND THAT THE AMOUNT OF PAPERS IS OVERWHELMING, EVEN WITH THE LISTS OF DOCUMENTS TO BE REVIEWED THAT WERE PROVIDED BY THE PARTIES. THESE PAPERS FILL OVER ONE "BANKER'S BOX."  MANY OF THE DOCUMENTS ARE EXHIBITS FOR ACCOUNTING AND TRACING PURPOSES.  AT SOME POINT THESE MAY BE WORTH REVIEWING – PROBABLY AS PART OF AN EVIDENTIARY HEARING OF A MOTION FOR ADJUDICATION OF ISSUES – BUT NOT YET.  RIGHT NOW I AM TRYING TO GET A HANDLE ON THE RELATIONSHIPS BETWEEN THE NAUDS AND MR. WANAMAKER AS THEY REFER TO ASSETS OF THIS ESTATE OR THE TRANSFER OF MONIES WHICH SHOULD BE IN THE ESTATE.  I FULLY REALIZE THAT THERE

IS A DISPUTE BETWEEN WANAMAKER AND AFI AS TO AFI'S BUSINESS PRACTICES, BUT IT APPEARS THAT THAT MAY HAVE BECOME IRRELEVANT AS A RESULT OF THE FLORIDA JUDGMENT AND, FURTHER, IS IRELEVANT TO THIS SET OF MOTIONS AS JUDGE KAUFMAN STATED IN HER TENTATIVE RULING (DECISION) ON THE FIRST CONTEMPT MOTION AS TO MS. NAUD.  OVER TIME WE WILL STRAIGHTEN OUT WHAT IS PROPER IN THIS COURT AS TO EACH MOTION/RULING/ALLEGATION.

JUDGE KAUFMAN PREPARED AN EXCELLENT SUMMARY OF THE RELATIONSHIP OF MR. WANAMAKER AND MS. NAUD AND OF THE HISTORY OF THIS PROCEEDING. (dkt. 286)  IN THIS CONTEMPT MOTION, AFFIANTI (AFI) REPEATS MUCH OF THIS.  TO THE EXTENT RELEVANT, THE COURT HAS BRIEFLY SUMMARIZED THE MAIN POINTS OF THE MOTIONS, OPPOSITIONS, AND REPLIES SUBMITTED IN THE CURRENT ROUND OF THIS DISCOVERY DISPUTE.  THESE ARE SET FORTH BELOW.

**JUDGE KAUFMAN'S PRIOR ORDER REQUIRES THAT PRODUCTION BE MADE BY MS. NAUD AS TO ALL DOCUMENTS RESPONSIVE TO DOCUMENT REQUESTS NO. 40 AND 43 WITHOUT OBJECTION (dkt. 303, 286)**

Requests No. 40 and 43, as cited by Judge Kaufman, are as follows:

40. All records from any financial institution where You held an account or deposited monies, including, but not limited to, banks, savings and loans, thrifts and loans, credit union accounts, or merchant accounts (MIDs), between January 1, 2016 and the present, and including, but not limited to, any monthly account statements, cancelled checks, deposit receipts, records for Venmo or other such accounts, share drafts, money market account statements, certificates of deposit, records of cashier's checks, passbook accounts or share accounts in Your name or in another business entity's name or some other person's name into which You deposited funds in which You claimed or held an interest, and any emails and attachments thereto, that are in Your possession, custody, or control and including all documents that are responsive to this document production request, regardless of whether the documents would positively or adversely affect the Debtor in any subsequent action to revoke his discharge.
…

43. Any and all tax returns and documents containing information used to prepare Your tax returns from after January 1, 2016 to the present, including, but not limited to, any records of income used to prepare

> Your tax returns, emails and attachments thereto between You and any person or business entity who prepared Your tax returns, and any other forms of communication, electronic or otherwise, that are in Your possession, custody, or control and including all documents that are responsive to this document production request, regardless of whether the documents would positively or adversely affect the Debtor in any subsequent action to revoke his discharge.

**CONTEMPT AND DISCOVERY MOTIONS FOR FAILURE TO PRODUCE AND RESPOND TO QUESTIONS AS TO MS. NAUD (dkt. 409, 430)**

Affiliati's Assertions

Wanamaker did online marketing for testosterone supplements. His flagship corporation was FitCrew. Wanamaker contracted with Affiliati (AFI) to market the products and FitCrew signed as guarantor. The sales increase was successful, but debtor defaulted and Affiliati filed suit in federal court in the Southern District of Florida for unpaid fees. Wanamaker and Naud moved money from the Debtor's accounts and those of FitCrew into other corporate accounts. A few weeks after the lawsuit was filed, Wanamaker, Naud, and Naud's husband created Ship Plus Logistics, which was used to move money and to pay Wanamaker and to purchase his $3 million home in Studio City. It is contended that millions of dollars were moved.

In December 2019 the District Court entered judgment against Wanamaker and FitCrew for $2.2 million. On January 7, 2020 Wanamaker filed this chapter 7 case.

AFI is searching for records to trace prepetition money. Some have been produced, but these are piecemeal and incomplete.

AFI contends that Wanamaker contracts with various business entities and then, rather than pay them, he moves the money into one of his shell corporations and keeps it as profit. Also, that Ms. Naud assists him in this. He disguises these transfers as "loans" or "intercompany transfers." AFI is seeking records of entities that Ms. Naud claims to own, but which are actually owned and controlled by Wanamaker before and after April 7, 2020. This information also effects the propriety of Wanamaker's discharge.

Reviewing the records of Ship Plus, Direct Media, Naud Muscle, and others shows that Mr. and Ms. Naud never personally put any money into starting up or operating any corporate entity including those that they now claim they own. Ms. Naud's tax returns show her as an office manager from 1/16-12/20, with a salary commensurate with that occupation. During this time, Wanamaker lived in luxury, which is not commensurate with Wanamaker as a rank-and-file Ship Plus employee.

In discovery in the Florida action, Wanamaker testified that he put Ms. Naud in the FitCrew "subsidiary" corporate entities only so that she could open bank accounts and do banking for entities that he created.

Debtor has filed a series of amended schedules that blossomed from 3 corporate entities to some 35 of them. And there are others that have been subsequently identified by Ms. Naud. He also has changed the proportionate ownership interest in several of these entities. And Ms. Naud has claimed that she only "lent" some of these corporations to Wanamaker although his original schedules show that he claims 100% ownership.

<u>Legal argument</u>

The scope of a 2004 examination can be very broad so long as it relates to the debtor's acts, conduct, or property. After she was served with a subpoena, Ms. Naud never objected or moved to quash. This waives all grounds for objection. Ultimately it took 13 months for her to produce anything.

Ms. Naud has the affirmative duty to locate and produce all designated non-privileged documents in her possession, custody, or control. This includes requesting them from her financial institutions.

As to a claim of privilege, that is to be set forth in a privilege log with proper identification.

Any claims of privacy by Ms. Naud as to documents with respect to her businesses is not relevant. AFI is seeking documents relating to Wanamaker's prepetition and ongoing corporate and money-transferring activities, of which Naud has been a part. This Court already held her in contempt for failure to produce her banking, financial institution, and tax records when she claimed "privacy" grounds. Not all have been produced – she failed to produce any beyond April 2020 and failed to produce her business and personal credit card statements. As to electronic documents, she has

produced just a few and refuses to identify the universe of electronic document-storing devices that she has.  AFI wants to inspect these by using a court-approved forensic expert.

Ms. Naud also asserts that she need not produce anything after April 7, 2020, which was the date of the 2004 order (dkt. 54).  The order said "to the present," but the examination was continued by stipulation for over a year, so the "present" kept slipping forward in time.

The movant then sets forth a multipage list of documents to be produced.

*Court comment: A MORE ORGANIZED LIST IS SET FORTH IN DKT. 503.*

Corder Omnibus First Supp Dec [dkt. 431]

First motion for contempt –  dkt. #202; order 10/12/21 - #303.

Starting on 10/21/21, respondent's counsel sent over 20 emails, each containing as many as 77 attachments containing personal banking and tax records and numerous corporate tax returns and banking records, including numerous corporations previously not disclosed or known by the movants.  These included Accelleral Inc, Entramax Inc, Health and Beauty Online, Health Products Online, Male Vitality Products, Muscle Fitness Online, and Fitness Online.  There were tax returns, some bank statements, but no ledgers, Quickbooks files, or books and records.  Time limited to pre-April 7, 2020.  On 7/21/21 David Lally sent a letter that everything had been produced except Ms. Naud's personal bank and tax documents.  Peter Lively sent a similar letter on behalf of Wanamaker on 8/17/21.  Lally sent an email to that effect on 8/18/21.

Also at her 2004 examination on 9/27, Ms. Naud refused to testify to any details regarding the business activities or financial affairs of Ship Plan and Direct Media, claiming that this was privileged as "proprietary" (dkt. 312, ¶9).

Corder Omnibus Second Supp Dec. [dkt. 449]

Staring at p. 15, there is a list of documents not produced.

*THERE ARE MANY OTHER DECLARATIONS AS TO VARIOUS TYPES OF DOCUMENTS AND RELATIONSHIPS.  AT THIS POINT THE COURT WILL NOT BE SUMMARIZING THEM OR REVIEWING THEM UNTIL CERTAIN*

*LIMITATIONS ARE DETERMINED.  THESE ARE BEST SET OUT IN THE MOTION FOR PROTECTIVE ORDER AND THUS THE TWO SETS OF MOTIONS ARE BEING HANDLED JOINTLY.*

<u>Ms. Naud's Opposition to Contempt Motion (dkt. 529)</u>

Ship Plus did not make any mortgage payments on behalf of the Debtor.  Ship Plus made one loan to the Debtor in August 2020, which was similar to one contractually due payment on Debtor's Wilkinson property to Shellpoint Mortgage.  FitCrew made one payment, for June 2017, on the Wilkinson property.  In 2019, Mr. and Mrs. Naud gifted 51% interest in funds they were owed from Scott Sport Nutrition to the Debtor, which he used to make his Shellpoint mortgage payments.

Ms. Naud asserts that she was an entrepreneur and not "nothing more than an office manager who did not even know she was listed as an office or director of FitCrew or any of its subsidiaries."

Ms. Naud has fully complied with the subpoena.  In her protective order she seeks to protect all Ship Plus information not related to FitCrew and its subsidiaries.  Ship Plus has third party relationships which have no connection to FitCrew or the Debtor.

Ms. Naud has provided the information about the start-up funding for Direct Media Sales, Inc.  This entity is not related to FitCrew and is solely owned by the Nauds.  She goes on to discuss other issues.

The contempt motion is specious and Ms. Naud should be paid her attorney fees by the movants.

<u>Ms. Naud's Opposition to Motion for Contempt as to Production of Documents (dkt. 531)</u>

In short, Ms. Naud directs the Court to her motion for a protective order and repeats much of what is in dkt. 529**.**

<u>Peter Lively's Omnibus Objection (dkt. 532)</u>

This sets forth correspondence that Mr. Lively mailed to opposing counsel.

<u>Opposition to request for fees by David Lally [dkt. 519]</u>

Mr. Lally instructed Ms. Naud not to answer questions about her personal finances and her private and personal businesses that have nothing to do with the Debtor and his finances. This is because of threats from Sanja Palta to shut down her businesses. To the extent that they seek fees from Mr. Lally, he objects. There has been no effort to meet and confer with Mr. Lally or to prepare the required discovery stipulation under LBR 7026-1(c)(2) or (3). Beyond that, all stipulations were sent to Mr. Lively on behalf of the Debtor and Ms. Naud, but none were sent to Mr. Lally.

Mr. Lally states that at the examination he requested offers of proof as to the connection of the questions about Ms. Naud's businesses and finances to Mr. Wanamaker or his business. Therefore, there was no reason for her to answer these questions. Further, instructing someone to only respond "if you know the answer" is not coaching.

**MOTIONS TO COMPEL DEBTOR TO PRODUCE FURTHER DOCUMENTS AND REQUIRING DEBTOR TO APPEAR AND GIVE TESTIMONY WITHOUT OBJECTION AND FOR A DISCOVERY REFEREE (dkt. 440, 448)**

As to the motion to compel production (dkt. 448), this is a mirror image of the one for Ms. Naud and largely deals with documents that may be in her possession or to which she may have access. It also contains of list of accounts that are largely identical to the items in the motion(s) concerning Ms. Naud.

As to the motion to require testimony (dkt. 440), Movant contends that at the Rule 2004 examination the Debtor was instructed by his attorney not to respond concerning the following: (a) evidence showing that the business entities listed in this motion and in the OB [*Omnibus?*] Statement of Facts as well as in the related OB First Supplemental Declarations are the Debtor's alter egos; (b) evidence that his non-exempt assets formerly held in his alter ego entity, FitCrewUSA, Inc. ("FitCrew"), were transferred both pre and post-petition to existing and new alter ego entities to hinder, delay, and defraud AFI; (c) evidence showing that the Debtor hid his business and personal assets in alter ego entities; (d) evidence showing he is using his first cousin, Ms. Christine Naud, as a shill, falsely claiming that she now owns the old and the new corporate entities holding his assets; (e) evidence showing that Estate assets were not disclosed in the Debtor's petition; and (f) evidence pertaining to potential claims for relief under 11 U.S.C. § 523 and 11 U.S.C. § 727.

-7-

The objections were untimely and disruptive.  AFI is permitted a wide scope of questioning and does not need to justify each question or area and thus educate the Debtor as to what it is seeking.  As noted elsewhere, Debtor refused to answer claiming that Mr. Palta is a "confirmed criminal," but there is no evidence to that assertion.  Similarly, arguments are made as to the privacy claim of Ms. Naud.

There is no justification for the Debtor to limit his production, etc. to April 2020.

Dkt. 415 is the statement of facts that demonstrates the attempts to meet and confer, etc.

The Movant lists 6 disputes and seeks attorney's fees and costs for bringing this motion.  It also requests that a discovery referee be appointed at the Debtor's expense.  The 6 disputes are as follows:

Dispute No. 1: AFI must disclose all the products of all of FitCrew's subsidiaries sold through FitCrew's website so that AFI can identify products of FitCrew and its subsidiaries, so that AFI can make full inquiry at Debtor's continued 2004 examination into their current location, including the products sold before and after April 7, 2020. The Debtor and his counsel are instructed not to make obstructionist objections.

Dispute No. 2: The Debtor is to appear and answer questions without limitation pertaining to all his finances and financial transactions regarding the Citibank accounts (ending in 5451 and 5444), and any other bank accounts, for all periods before and after April 7, 2020, and regarding the sources of funds deposited into his personal accounts and any business accounts of entities in which he held an interest or from which he received funds transferred into any of his personal accounts. The Debtor and his counsel are instructed not to make obstructionist objections.

Dispute No. 3: The Debtor is to respond to all questioning regarding any [of the] corporations in which he held an interest before or after April 7, 2020, or in which Mr. or Ms. Naud allegedly owned or hold an interest, including, but not limited to, questions about UR Media's clients, Ship Plus, FitCrew, Direct Media, and Naud Muscle, Inc. or any other corporate entities identified in Exhibit "53" to the OB Supplemental Curlee Declaration [dkt. 416-1, p. 392-3], or any other corporate entity which AFI subsequently discovers that is related to the Debtor

or Mr. and Ms. Naud. The Debtor and his counsel are instructed not to make obstructionist objections.

Dispute No. 4: The Debtor is to answer the questions "yes" or "no," regarding whether he advised the Chapter 7 Trustee of any errors or omissions in his petition at the February 18, 2020 341(a) meeting of creditors and that the Debtor answer "yes" or "no," and without qualification at the May 27, 2020 341(a) continued meeting of creditors, and order that Mr. Lively be directed to not interfere with the questioning of the Debtor. [*Court: this is unclear as to the 5/27/20 341(a). Also, Debtor asserts that he did not notify the UST of this.*]

Dispute No. 5: The Debtor must produce all records of the sources of funds used to purchase the Stefano Curto sculpture, the Bob Dylan and Muhammad Ali Lithographs, and all records relating to the artworks' authenticity, the purchase, including receipts, bills, bills of lading, certificates of authenticity, credit card statements, invoices, cancelled checks and other statements and documents evidencing payment therefor. The Debtor must also identify whether the Muhammad Ali Lithograph is original or a reprint, produce any documentary evidence that he purchased the Dylan and Muhammad Ali lithographs, and give AFI's counsel access to examine all of the artwork. The Debtor and his counsel are instructed not to make obstructionist objections.

Dispute No. 6: The Debtor is to testify at his continued examination concerning his banking and financial records and transactions before and after April 7, 2020. The Debtor and his counsel are instructed not to make obstructionist objections. [*Court: note that the Debtor has turned over the artwork to the Trustee.*]

Wanamaker Opposition to Motion to Produce (Dkt. 530)

In short, Debtor states that all relevant documents have been produced though April 7, 2020.

Wanamaker Opposition to Affiliati Motion as to Testimony (Dkt. 528)

As to the requested information, the Debtor either does not have it or cannot access it. FitCrew's model was that there were a group of corporate subsidiaries each handling different brands.

They advertised through fitcrewusa.com with all net sales proceeds flowing into FitCrew and all common expenses flowing out. This was in 2016. Debtor cannot recall all the names of the products that FitCrew sold – many were owned by other companies. Because FitCrew used third-party distributor Europa Sport Partners Inc to contract directly with third-parties for distribution and the sale of these products, Wanamaker does not have information of the identities of the third-parties or their products.

Judge Kaufman ruled that AFI can examine the Debtor and his finances through July 10, 2020, so the AFI arguments on this are moot. *[The Court does not know where this ruling is in the record.]*

The issue of whether the Debtor advised the UST of the need for further amendments is moot because he didn't and he was not aware of these until he obtained new counsel.

The Debtor is no longer claiming an exemption and has turned the assets over to the Trustee.

The Citibank cashier's check referred to a check serial number and not a bank account.

This motion was unnecessary and Creditors should pay the Debtor's attorney fees. Also this Court has already appointed a discovery referee and it is the creditors who should pay for this because it is their actions which have made it necessary. *[The Court does not know where this ruling is in the record. I am not a discovery referee.]*

## MOTION FOR PROTECTIVE ORDER (dkt. 446, 447)

**Dispute #1** – The period after 4/7/20.

Naud – using "present" to mean "today" would result in a never-ending moving target and this is unduly burdensome.

AFI – doesn't specifically deal with this other than its argument in the contempt motions that "present" means sometime after 4/7/20, probably the present.

*[The Court is confused because the Debtor asserted that Judge Kaufman already ruled that the cutoff date would be July 10, 2020, but I have not seen a ruling to this effect.]*

**Dispute #2** – Mr. Naud's and Mrs. Naud's personal credit card statements

-10-

Naud – The term "financial institution" is not defined.  If it means the credit cards, then Naud's right to privacy outweighs the potential value to AFI in discovering information or evidence that might support a 523/727 complaint.  The original request and all production disputes referred to Mr. and Mrs. Naud's joint bank statements and joint tax returns, not to credit cards.  These were never requested.  This is also an improper attempt to collect the judgment against FitCrewUSA, Inc. and the Debtor in furtherance of AFI's superior court case. [*Court: please identify the superior court case and explain how it relates to the Florida federal court case.*]

AFI – Credit cards are not carved out of request #40.  Ms. Naud used credit cards to pay Wanamaker's personal expenses and "loaning" him money and this compels the production of her credit card records.

**Dispute #3** – Production of all electronic devices that may contain ISP (Information sought to be protected) regardless of who may be in possession of the electronic device(s).

Naud – This is beyond the scope of the 4/7/20 Order and is a violation of privacy and attorney-client privilege.

AFI – the Document Requests define "documents" to include "electronic documents."  It included "Information maintained in a format recognizable by a computer, such as a hard drive, discs, zip files, ASCI discs, tape, card, etc." [*Court: is this meant to modify requests #40 and $43 or is there a specific request for all documents?*]

**Dispute #4** – Ms. Naud seeks to protect ISP and testimony as to the list of corporations in subset #2 and subset #3 and also those related to subset #1 before 10/18.

Naud – Subset #1 corporations are only related to the Debtor and his bankruptcy estate because of their temporary involvement in helping FitCrew and its affiliates to process sales orders.  In October 2018 FitCrew and its affiliates ceased selling all products.  After 2018 Ms. Naud ran the subset #1 corporations to sell her separately manufactured and branded weight loss supplements, etc.  They did not sell any products or use any brands previously sold or used by FitCrew and its affiliates.  All of these except Naud Muscle ceased business operations "as early as 12/15." Naud Muscle's MID Account was

terminated in or about 4/18 and it was revived as Ms. Naud's management company in 3/19, which is currently its purpose.

Subset #2 and #3 are wholly owned by Ms. Naud and were never associated with FitCrew or its affiliates in any way and never sold products or used any brands previously sold or used by FitCrew and its affiliates. The Debtor never had any ownership in these corporations.

Naud is afraid that AFI (Mr. Palta in particular) will use the ISP to interfere with her prospective economic advantage as he has before.

AFI – FitCrew received the money from credit card sales of subsidiaries and then, starting in 10/16, it was drained of money through 10/18 and the money went to Ship Plus and UR Media and elsewhere. The scheme has continued through existing and new shell entities with a "mothership" corporation that used to be FitCrew, then became UR Media, and now appears to be Health and Fitness Online Inc and possibly Direct Media Sales Inc.

There is no evidence to support that the Nauds are owners of these corporations, ever put money into them, or received owner compensation from them. Her tax returns only show that she was "office manager," with a salary commensurate to that position.

The loan application that Debtor used to buy his home claimed that he owned 100% of the corporations that he listed in his original and amended schedules including Ship Plus and the subsidiaries of FitCrew including 100% of Naud Muscle, Inc.

It is necessary to trace Debtor's assets through these various companies.

**Dispute #5** - Ms. Naud seeks to protect ISP and limit production of documents and information from Ship Plus, to prevent production of ISP and testimony regarding corporations in Subset 2 and Subset 3 entirely, and to corporations in Subset 1 after October 2018.

Naud – She is concerned that Mr. Palta will use this to interfere with her prospective economic advantage as he has in the past. ShipPlus has relationships with third parties and other companies after 10/18 when its relationship with FitCrew and FitCrew's affiliates ended.

AFI – beyond the arguments as to Disputes #1 and #4 above, Debtor stated in his mortgage application that he was the 100% owner of Ship Plus.  The money that Ship Crew had that Debtor used to pay for his down payment, etc. came from FitCrew.

Starting 11/1/17, the employees of FitCrew and Media Core became employees of Ship Plus and started receiving their paychecks from Ship Plus.

**Dispute #6** – Ms. Naud seeks to limit the production of documents and information from United Response Media Group Inc. to prevent production of ISP and testimony regarding corporations in Subset 2 and Subset 3 entirely and to corporations in Subset 1 after October 2018.

Naud - She is concerned that Mr. Palta will use this to interfere with her prospective economic advantage as he has in the past.  UR Media has relationships with third parties and other companies after 10/18 when its relationship with FitCrew and FitCrew's affiliates ended.

AFI – beyond the arguments as to Disputes #1, #4 and #5 above, Debtor stated in his schedules A and B that he owned 100% of UR Media with a value of $0 and in his amended schedules he changed that to a 20% interest.  Thus he is at least a part owner.

Affiliati Opposition to Motion for Protective Order [dkt. 524, 525, 526, 527]

The motion was not timely since it was not within 14 days of the subpoena.  Judge Kaufman ruled that Ms. Naud has waived all objections to the subpoena, including any privilege-based objections.  This motion was only after Ms. Naud and the Debtor began producing records and giving testimony and had changed attorneys.

The evidence that they have submitted demonstrates that the records and testimony are not beyond the scope of permissible discovery under Rule 2004.  There are 79 discovered corporate shells that are being used to hide the Debtor's assets.  The motion for a protective order does not refute any of this evidence and there is no demonstration of actual or potential harm to the corporations or their clients.

The Debtor has amended his statements 6 times.  While he and Ms. Naud have produced some documents, they are not producing profit and loss statements, balance sheets, draw reports, working

papers used in the tax returns, or general ledgers.  Emails have been redacted or produced without attachments.

The allegations against Mr. Palta and AFI are irrelevant and have previously been litigated.

The unrefuted evidence shows that the Debtor was using FitCrew, Ship Plus, and other entities to pay for his luxurious lifestyle.  Ms. Naud paid nothing for her Ship Plus interest.  The Debtor has moved his business assets from FitCrew to Ship Plus and UR Media and then to Direct Media, Ship Plus and other currently operating companies.

[*The Court is not going to deal with the evidentiary objections at this time*.]

### PROPOSED RULING AS TO ALL MOTIONS

A 2004 examination is seen as a "fishing trip," but it is not unlimited.  The Court has full discretion to limit the invasiveness, to weigh what should be allowed, or to terminate the examination, etc.  A good discussion of the uses and limits of a 2004 examination is set forth in *In re Roman Catholic Church of the Diocese of Gallup*, 513 B.R. 761 (Bankr. NM, 2014).

The initial question is when the purpose of Rule 2004 has been sufficiently accomplished that the 2004 process should be terminated and the parties should, if they wish to, move on to the litigation scenario.  Its primary purpose is to permit the trustee to quickly ascertain the extent and location of the estate's assets and does not grant the same limitations as discovery motions under the Federal Rules of Bankruptcy Procedure.  *In re Wilcher*, 56 B.R. 428 (Bankr. ND ILL, 1985).  It is "properly used by a trustee to reveal the nature and extent of the estate, and as a pre-litigation device to determine if there are grounds to bring an action."  *In re Brooke*, 2013 Bankr. LEXIS 3033, 2013 WL 3948866 (Bankr. Kansas, 2013).

While not all discovery is complete as to the movement of money between Mr. Wanamaker and the Nauds or the prepetition interest that Mr. Wanamaker had (and continued to have) in a variety of corporations, it is not the purpose of Rule 2004 to resolve these matters.  Rather, this pre-litigation process is satisfied once the Trustee or the creditor has obtained sufficient information (and in this case evidence) to show that it would be acting in good faith to file one or more adversary proceedings (such as to deny discharge and/or dischargeability of specific debt(s) and/or to seek the recovery of fraudulent

transfer(s)).  Once that has been accomplished, it is time to terminate the 2004 process because the movants and/or the Trustee can proceed to litigation, should they so desire.

If the Court decides to allow the 2004 process to continue, it must be alert that the 2004 examination does not have the safeguards of the discovery procedures in adversary or contested matters. Thus, the Court must be particularly careful in supervising what is being sought. There is evidence in the declarations that Mr. Palta is unscrupulous in his business model and that giving him unfettered access to Ms. Naud's personal and business records has a distinct possibility of future damage to her and her wholly owned businesses.  But even if this is true, it must be weighed against the right of AFI to investigate the assets and business dealings of the Debtor.  Further, Judge Kaufman has ruled that objections as to privacy and privilege were waived as untimely, though that may be premature as to this second round of discovery. However, AFI is a creditor of Wanamaker, not of Naud, so the Court must keep this in mind when using its discretion and weighing the invasiveness of any discovery as to Naud.

So I will begin with a few questions that I need the parties to briefly answer at the hearing:

1. Given the amount of documentary and oral evidence that AFI has already received, why do they need to continue with the 2004 examinations before they file their adversary proceeding(s) against Mr. Wanamaker and, perhaps, Ms. Naud?
2. There was a reference to a federal judgment or case in Florida, but also to one in the superior court.  What is the status of each?
3. What is the relevance of post-petition records as to the bankruptcy assets of Mr. Wanamaker?
    a. Assuming that there is relevance, is it equal as to every entity or just some and, if only some, which ones?
4. I think that the time has come to lay some issues to rest through the equivalent of a motion for partial adjudication, whether this remains as a 2004 examination or as a discovery

motion in an adversary proceeding or contested matter.  Let's discuss the process to do that.

Assuming that I allow further discovery under Rule 2004 and I do it without a process as suggested in the prior paragraph, at this point in time it seems that the ruling on these motions will be as follows:

(1) Unless Judge Kaufman determined that July 20, 2020 is the correct date, the original order, which was issued on April 7, 2020, set June 1, 2020 as the production date.  The examination was continued a variety of times and so was the production date.  If I extend the date after April 7, 2020 to that of the actual stipulated production date of 7/19/21,  the deponents have a right to gather documents and not be required to keep adding to that pile of papers.  So for them to comply with the 7/19/21 date, it seems appropriate that April 30, 2021 would be a cutoff date.  Again, is this as to all entities and accounts or just some, and which ones?

(2) The broad definition used in request #40 does not include credit card statements.  It could, but it doesn't.  If you seek these in a new order, please make a showing of relevance and of how you intend to protect privacy.

(3) The issue of electronic files seems to be in the definition section of "documents" and does not include the electronic device itself (ie. the computer), although it does include the hard drive.  But Judge Kaufman's order only concerned requests #40 and #43, not a general romp through the Naud computer or even her hard drive.  Should I allow it, it would only be as a last resort and must be done in such a way that private information is not revealed.  But it is not covered by Judge Kaufman's order [dkt. 303] and thus will not be allowed at this time.

(4) If there is evidence of money or business transferred from a company that Wanamaker had an interest in and that company was still operating after April 7, 2020, allow discovery as to that business through 4/30/21.

(5) Allow discovery of records for all corporations that Wanamaker disclosed an interest in per his schedules or loan applications, etc.  Provide the Court with a chart as to each such

Case 1:20-bk-10026-VK    Doc 541    Filed 06/07/22    Entered 06/07/22 14:59:01    Desc
Main Document    Page 17 of 17

corporation showing how and when the interest was claimed, the status on the petition date, and any information that shows that this business continued after the petition date.

(6) As to tax returns, if there is a declaration that a true-and-correct copy was produced, the copy that was produced need not be signed.

(7) Obtain a list from Ms. Naud of the corporations that she claims are owned by her or her and her husband and in which Wanamaker has never had an interest and that received no money from a corporation in which Wanamaker had an interest.  Provide the foundational documents as to these corporations (filings with the secretary of state, opening of a bank account, opening of a MID account, copy of initial deposit check(s), etc.).

(8) Unless there is evidence as to the corporations in #7 that shows a tracing to Wanamaker or to a corporation in which he has or had an interest, further discovery under Rule 2004 will be denied as to these corporations.

(9) Since the Debtor has released his homestead and turned over the art to the Trustee, it appears that the requests as to those are no longer relevant.

(10) Craft a protective order so that AFI does not have access to customer lists, vendor lists, etc. of the Naud corporations or of corporations that Wanamaker had no interest in as of the petition date.

(11) If Judge Kaufman has not yet appointed a discovery referee, appoint a person to serve as a discovery referee.  Define the task of that person so as to not violate FRBP 9031.

(12) Defer awarding fees at this time, but that does not mean that no fees and costs will be awarded.  Once I can really look at the issues raised on both sides as to fees, I will deal with this matter.

###

Date: June 7, 2022

Geraldine Mund
United States Bankruptcy Judge